**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:25-CV-24241-DIMITROULEAS**

REYES HERNANDEZ GONZALES,

*Plaintiff*,

v.

NICOLÁS MADURO MOROS, *et al.*,

*Defendants*.

Case No. 1:25-cv-24241-Dimitrouleas

**RENEWED MOTION TO DISMISS COMPLAINT WITH PREJUDICE**
**BY PETRÓLEOS DE VENEZUELA, S.A.**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

December 10, 2025                    *Counsel for Petróleos de Venezuela, S.A.*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ......................................................................................................... 2

     A.    Political Crisis In Venezuela ...................................................................... 2

     B.    Factual and Procedural History ................................................................. 4

ARGUMENT ............................................................................................................. 6

I.     The Court Should Dismiss The Amended Complaint For Insufficient Process And Insufficient Service Of Process ................................................................................ 6

II.    The Court Should Dismiss The Amended Complaint For Lack Of Subject-Matter Jurisdiction Under The Foreign Sovereign Immunities Act ................................... 10

III.   The Court Should Dismiss The Amended Complaint For Lack Of Personal Jurisdiction Over PDVSA ........................................................................................ 12

IV.   The Court Should Dismiss The Amended Complaint As An Impermissible Shotgun Pleading .................................................................................................................. 12

V.    The Court Should Dismiss The Amended Complaint For Failure To State A Claim ................................................................................................................................ 13

     A.    Plaintiffs Fail To State A Claim Under The ATA ..................................... 14

     B.    Plaintiffs Fail To State An ATA Claim Under State Law .......................... 18

VI.   The Court Should Dismiss The Amended Complaint For Improper Venue .......... 18

CONCLUSION .......................................................................................................... 20

REQUEST FOR HEARING .......................................................................................... 20

RULE 7.1(a)(3) CERTIFICATION ............................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989).................................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................13

*Ashley v. Deutsche Bank Aktiengesellschaft*,
    144 F.4th 420 (2d Cir. 2025) .................................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................13

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
    581 U.S. 170 (2017)...............................................................................................10

*Butler v. Sukhoi Co.*,
    579 F.3d 1307 (11th Cir. 2009) ........................................................................6, 10

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
    No. 20-mc-0040, 2021 WL 1884110 (W.D.N.Y. May 11, 2021) .................6, 10

*Commodities & Minerals Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*,
    No. 17-cv-20196, 2017 WL 11625759 (S.D. Fla. Apr. 4, 2017).........................9

*Fields v. Twitter*,
    881 F.3d 739 (9th Cir. 2018) ..........................................................................15, 16

*Fraser v. Smith*,
    594 F.3d 842 (11th Cir. 2010) ...............................................................................12

*Freeman v. HSBC Holdings PLC*,
    57 F.4th 66 (2d Cir. 2023) .....................................................................................18

*G&A Strategic Invs. I LLC v. Petroleos de Venezuela, S.A.*,
    788 F. Supp. 3d 616 (S.D.N.Y. 2025)....................................................................3

*Goff v. Hackett Stone Co.*,
    No. 98-cv-7137, 1999 WL 397409 (10th Cir. June 17, 1999)...........................20

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. App. 1983) .............................................................................18

*Isaac Indus., Inc. v. Petroquimica de Venezuela, S.A.*,
    No. 19-23113, 2022 WL 820376 (S.D. Fla. Mar. 1, 2022)................................10

*Jiménez v. Palacios*,
    250 A.3d 814 (Del. Ch. 2019)...........................................................................3, 10

*Keeton v. Hustler Mag., Inc.*,
    465 U.S. 770 (1984) ........................................................................................................ 12

*Keren Kayemeth Leisrael-Jewish Nat'l Fund v. Educ. for a Just Peace in the Middle East*,
    530 F. Supp. 3d 8 (D.D.C. 2021) .................................................................................... 16

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018).................................................................................... 15, 16

*LS Energia Inc. v. Corporacion Electrica Nat'l, S.A.*,
    No. 21-cv-21642, 2023 WL 122196 (S.D. Fla. Jan. 6, 2023).......................................... 6, 7

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017).............................................................................................. 18

*Newman v. Associated Press*,
    758 F. Supp. 3d 1357 (S.D. Fla. 2024) .................................................................... passim

*O'Neill v. Al Rajhi Bank*,
    714 F.3d 118 (2d Cir. 2013)................................................................................... 15, 16

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015)............................................................................................................ 6

*Oldfield v. Pueblo de Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) ..................................................................................... 12

*Owens v. BNP Paribas, S.A.*,
    897 F.3d 266 (D.C. Cir. 2018) ....................................................................................... 15

*PDVSA US Litig. Tr. v. LukOil Pan Am's LLC*,
    65 F.4th 556 (11th Cir. 2023) .................................................................................. passim

*Pinson v. Rumsfeld*,
    192 F. App'x 811 (11th Cir. 2006) ................................................................................. 20

*Prewitt Enters. v. OPEC*,
    353 F.3d 916 (11th Cir. 2003) .......................................................................................... 7

*Republic of Hungary v. Simon*,
    604 U.S. 115 (2025).......................................................................................................... 8

*Republic of Sudan v. Harrison*,
    587 U.S. 1 (2019)......................................................................................................... 7, 8

*Rodriguez v. Imperial Brands PLC*,
    No. 20-cv-23287, 2022 WL 18704831 (S.D. Fla. Nov. 2, 2022) ..................................... 19

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)..................................................................................... 15, 16

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*,
    23 F.4th 1036 (D.C. Cir. 2022) .......................................................................... 8

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) ........................................................................................... 10

*Sequeira v. Republic of Nicaragua*,
    815 F.App'x 345 (11th Cir. 2020) ..................................................................... 10

*SPV OSUS, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018).............................................................................. 17

*T.D.S. Inc. v. Shelby Mut. Ins. Co.*,
    760 F.2d 1520 (11th Cir. 1985) ........................................................................ 13

*In re Terrorist Attacks on September 11, 2001*,
    298 F. Supp. 3d 631 (S.D.N.Y. 2018)................................................... 10, 11, 14

*Texas Trading and Milling Corp. v. Fed. Republic of Nigeria*,
    647 F.2d 300 (2d Cir. 1981).............................................................................. 12

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)..................................................................................... 15, 17

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988) ............................................................................................ 8

*Walden v. Fiore*,
    571 U.S. 277 (2014)........................................................................................... 12

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016).............................................................................. 14

*Water Splash, Inc. v. Menon*,
    581 U.S. 271 (2017)............................................................................................. 8

*Watson v. Kingdom of Saudi Arabia*,
    No. 21-cv-329, 2024 WL 1344643 (N.D. Fla. Mar. 30, 2024)................... 11, 14

*Weiland v. Palm Beach Cty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ................................................................... 12, 13

*Weiss v. Nat'l Westminster Bank PLC*,
    768 F.3d 202 (2d Cir. 2014).......................................................................... 15, 16

*Weldon v. Ramstad-Hvass*,
    512 F. App'x 783 (10th Cir. 2013) .................................................................... 20

*Wultz v. Islamic Republic of Iran*,
    755 F. Supp. 2d 1 (D.D.C. 2010)................................................................. 15, 16

*Zobay v. MTN Grp. Ltd.*,
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) .............................................................................17

Pursuant to Rules 8(a)(2), 10(b), and 12(b)(1)-(6) of the Federal Rules of Civil Procedure, Petróleos de Venezuela, S.A. ("PDVSA")—an "agency or instrumentality of a foreign state" immune from the jurisdiction of courts in the United States under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(a), 1441(d), 1602-1611 ("FSIA")—moves to dismiss all claims against PDVSA with prejudice.

## PRELIMINARY STATEMENT

PDVSA, as owned by the U.S.-recognized government of the Bolivarian Republic of Venezuela and governed by the Ad Hoc Administrative Board ("Ad Hoc Board") established by the U.S.-recognized government, condemns the alleged acts perpetrated against Plaintiffs by the illegitimate regime of Nicolás Maduro, as alleged in the Amended Complaint. But PDVSA is not responsible for those acts, nor does this Court have subject-matter or personal jurisdiction over PDVSA for this action. The Amended Complaint offers only the barest of allegations against PDVSA and does not allege any conduct by PDVSA with any connection to the United States or to Plaintiffs' injuries. The Amended Complaint should be dismissed with prejudice as to PDVSA for the reasons below. PDVSA put Plaintiffs on notice of these flaws in PDVSA's opening motion to dismiss, yet the Amended Complaint makes no attempt to remedy them.

*First*, PDVSA, as Venezuela's wholly owned national oil company, is an "agency or instrumentality of a foreign state" under the FSIA, 28 U.S.C. §§ 1330(a), 1602-1611, as amended. The FSIA contains the exclusive and comprehensive framework under which a foreign state and its agencies and instrumentalities must be served. Plaintiffs were therefore *required* to serve PDVSA under the mandatory, hierarchical service provisions set forth in 28 U.S.C. § 1608(b). *See* Fed. R. Civ. P. 4(j)(1). But Plaintiffs failed to do so. The Amended Complaint therefore must be dismissed under Rules 12(b)(4) and 12(b)(5) for insufficient process and insufficient service of process.

*Second*, under the FSIA, PDVSA is presumptively immune from the jurisdiction of courts in the United States, and Plaintiffs have failed to establish any exception to that immunity. Indeed, the Amended Complaint does not even allege that any exception to immunity applies. Nor could it, because none of the exceptions available under the FSIA applies to Plaintiffs' claims as a matter of law. As a foreign state, PDVSA is immune from actions brought under the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA"). The only exception to that immunity that could possibly apply, 28 U.S.C. § 1605B, is unavailable here, because the Amended Complaint does not meet any of its threshold requirements—including because

1

Plaintiff Gonzales is not a U.S. national, and both Plaintiffs' injuries occurred in Venezuela. The Court thus lacks subject-matter jurisdiction, and the Amended Complaint should be dismissed, with prejudice, under the FSIA and Rule 12(b)(1) of the Federal Rules of Civil Procedure.

*Third*, to obtain personal jurisdiction over a foreign state like PDVSA, Plaintiffs must establish both proper service of process and an exception to sovereign immunity under the FSIA. Because Plaintiffs have attempted neither, the Amended Complaint must be dismissed under Rule 12(b)(2). Personal jurisdiction is further lacking because Plaintiffs do not allege any conduct by PDVSA with any connection to the United States that would render the exercise of personal jurisdiction consistent with due process.

*Fourth*, the Amended Complaint is an impermissible shotgun pleading that fails to put PDVSA on notice of the claims against it. Indeed, the Amended Complaint does not even specify whether Plaintiffs are attempting to bring an ATA claim for primary liability, aiding and abetting, or conspiracy.

*Fifth*, the Amended Complaint fails to state a claim for relief against PDVSA under the ATA, because the Amended Complaint's bare-bones allegations fail to connect any conduct by PDVSA to Plaintiffs' injuries. And because Plaintiff Gonzales is not a U.S. national, he has no cause of action under the ATA. Because the Amended Complaint fails to sufficiently plead any element of any cause of action, it must be dismissed under Rule 12(b)(6).

*Sixth*, the Amended Complaint must be dismissed under Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue, because Plaintiffs fail to plead that a "substantial part of the events or omissions giving rise to the claim occurred" in this district, as required under 28 U.S.C. § 1391(f)(1). To the contrary, the events giving rise to Plaintiff's claims occurred exclusively in Venezuela. Given the lack of jurisdiction and fatal pleading defects, it would be futile to allow Plaintiff to attempt proper service, amend his Complaint, or transfer to the U.S. District Court for the District of Columbia (the default venue for suits against foreign states under 28 U.S.C. § 1391(f)(4)). Dismissal with prejudice is thus required.

## BACKGROUND

### A.    Political Crisis In Venezuela

Undersigned counsel appears at the behest of PDVSA's Ad Hoc Board, appointed by the U.S.-recognized government of Venezuela. *See* Decl. of Horacio Francisco Medina Herrera ¶¶ 4-14 (Nov. 6, 2025), ECF 15-1 ("Medina Decl."). The Ad Hoc Board is charged with protecting and preserving the assets of PDVSA, Venezuela's wholly owned national oil company, from being usurped by Nicolás Maduro's illegitimate regime. *Id.*

2

Following Maduro's self-proclaimed victory in the sham 2018 Venezuelan presidential election, Venezuela's democratically elected legislature, the 2015 National Assembly, declared Maduro's presidency illegitimate, and on January 23, 2019, established an Interim Government, pursuant to Venezuela's Constitution. *See id.* ¶ 4; *see also Venezuela: A Democratic Crisis*, U.S. Dep't of State, https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/. President Trump immediately recognized the Interim Government. *See PDVSA U.S. Litig. Tr. v. LukOil Pan Am's LLC*, 65 F.4th 556, 561 (11th Cir. 2023). The United States has continually reaffirmed its support for the U.S.-recognized opposition government of Venezuela, explaining recently that "since January 23, 2019, the United States has not recognized Maduro and his associates as the government of Venezuela," and, instead, "the United States recognizes the 2015 National Assembly as the government of Venezuela." Ltr. from Amb. Michael G. Kozak, *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 19-cv-10023 (S.D.N.Y. filed Aug. 29, 2025), ECF 393-1; *accord* U.S. Statement of Interest 1, *MUFG Union Bank, N.A.*, No. 19-cv-10023 (S.D.N.Y. filed Aug. 29, 2025), ECF 393 (affirming "recognition of, and firm support for, the 2015 National Assembly of Venezuela as the government of Venezuela").

In response to the Maduro regime's unlawful conduct, and to protect and preserve the assets of the Republic for the Venezuelan people, the 2015 National Assembly enacted the Statute to Govern a Transition to Democracy. *See* Medina Decl. ¶ 4; *see also Jiménez v. Palacios*, 250 A.3d 814, 824, 839-41 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020) (holding that 2015 National Assembly's creation of PDVSA's Ad Hoc Board under Democracy Transition Statute was valid and rejecting plaintiffs' non-recognition arguments). Consistent with the Statute to Govern a Transition to Democracy, the 2015 National Assembly established the Ad Hoc Board of PDVSA. Medina Decl. ¶¶ 7-8. Since 2019, PDVSA has been under the *de jure* control of the Ad Hoc Board, the entity established to oversee PDVSA's affairs by Venezuelan laws and decrees enacted by the U.S.-recognized government of Venezuela. *See* Medina Decl. ¶¶ 4-14; *see also LukOil*, 65 F.4th at 563 (holding that court "cannot question the validity of then-President Guaidó's appointment of an alternative board of directors" for PDVSA). In support of the Interim Government, the United States protectively blocked PDVSA's assets to prevent the illegitimate Maduro regime from usurping PDVSA's assets and to "preserve these assets for the people of Venezuela." U.S. Dep't of Treasury, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A.* (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594; *see also G&A Strategic Invs. I LLC v.*

*Petroleos de Venezuela, S.A.*, 788 F. Supp. 3d 616, 624 (S.D.N.Y. 2025) (finding that "primary goal of the Ad Hoc Board was to protect PDVSA's assets abroad").

The members of the Ad Hoc Board, like other Venezuelan opposition leaders, fled Venezuela because of repression by the Maduro regime. Medina Decl. ¶ 15. They live and operate in exile and cannot return to Venezuela out of fear for their lives. *Id*.

### B.    Factual and Procedural History

Plaintiff Gonzales, a Venezuelan national, filed the original Complaint, alleging that he is the victim of extrajudicial arrest, torture, and theft of property at the hands of the illegitimate Maduro regime in Venezuela. Compl. (Sept. 17, 2025), ECF 1. The Complaint sought to hold Maduro and various members of his regime liable for Plaintiff Gonzales's injuries. The Complaint also sought to hold PDVSA liable, but did not allege any conduct by PDVSA that is connected to Plaintiff Gonzales's injuries.

Plaintiff Gonzales requested and obtained a summons directed at the Ad Hoc Board of PDVSA at an address in Hollywood, Florida. *See* Summons as to PDVSA (Oct. 1, 2025), ECF 5. The summons demanded a response within twenty-one days, even though, as an agency or instrumentality of a foreign state, PDVSA is entitled to sixty days to respond.

Plaintiff Gonzales did not attempt to serve PDVSA under the strict, hierarchical requirements set forth in the FSIA. Instead, Plaintiff Gonzales sent a process server to knock on—and listen through—the door at all hours, including as late as 11:46pm, on several occasions. *See* Cert. of Service (Oct. 27, 2025), ECF 9 (Plaintiffs' process server swearing that he knocked and listened through the door on six occasions, including at 8:10pm, 3:50pm, 1:10pm, 9:47pm, ***11:46pm***, and 9:26am). On October 16, 2025, apparently hearing sounds from inside, the process server then knocked loudly and aggressively until the Chairman of the Ad Hoc Board, Horacio Medina, answered the door. *Id*.; Medina Decl. ¶ 16. The process server then, in a rude and aggressive manner, gave Mr. Medina the summons and original complaint in this case. Medina Decl. ¶ 16.

Despite never being served under the FSIA, and without waiving its rights, including, but not limited to, lack of subject-matter and personal jurisdiction and ineffective service of process, PDVSA moved for dismissal. *See* Mot. to Dismiss (Nov. 6, 2025), ECF 15. PDVSA's motion identified numerous fatal flaws in the original complaint that required the Court to dismiss Plaintiff Gonzales's claims with prejudice, including that:

- Plaintiff Gonzales had failed to serve PDVSA, a foreign state, under the mandatory, hierarchical provisions set forth in the FSIA.

- Plaintiff Gonzales did not allege that any exception to PDVSA's presumptive immunity under the FSIA applied, and indeed, none of the FSIA's exceptions applied to his claims as a matter of law, and so the Court lacks subject-matter jurisdiction.

- Because Plaintiff Gonzales failed to establish both proper service of process and an exception to sovereign immunity under the FSIA—and because Plaintiff Gonzales failed to allege any conduct by PDVSA with any connection to the United States that would render the exercise of personal jurisdiction consistent with due process—the Court lacks personal jurisdiction.

- The Complaint was an impermissible shotgun pleading that failed to meet basic Rule 8 standards, including, for instance, failing to allege what type of ATA claim Plaintiff Gonzales was attempting to bring.

- The Complaint's bare-bones allegations failed to state a claim against PDVSA under the ATA, and in any event, Plaintiff Gonzales has no cause of action under the ATA because he is not a U.S. national.

- Venue was improper under the FSIA, because the events giving rise to Plaintiff Gonzales's claims occurred entirely in Venezuela, but the FSIA only allows claims to be brought in the district where a "substantial part of the events or omissions giving rise to the claim occurred" (or, in the alternative, in the U.S. District Court for the District of Columbia).

*See* Mot. 1-2, 5-17.

The Amended Complaint makes no attempt to remedy any of the flaws articulated in PDVSA's motion. *See* Am. Compl. (Nov. 26, 2025), ECF 21. Instead, the Amended Complaint simply adds a new Plaintiff, Mr. Pereira, whose claims suffer from nearly all the same insurmountable failures. The Amended Complaint continues to allege that Plaintiff Gonzales was the victim of torture, kidnapping, and theft by the illegitimate Maduro regime, but still does not allege any conduct by PDVSA connected with his injuries. As to Mr. Pereira, the Amended Complaint alleges that he was kidnapped and tortured by the Maduro regime in a separate incident. The Amended Complaint does not allege any conduct by PDVSA connected with his injuries either.

The Amended Complaint continues to allege (at ¶ 22) that PDVSA "is the Venezuelan state-owned oil and natural gas company." Yet the Amended Complaint still does not allege any exception to PDVSA's sovereign immunity. Nor does the Amended Complaint allege that either subject-matter or personal jurisdiction is somehow otherwise proper under the FSIA.

Plaintiffs' only allegations as to PDVSA are contained in a *single paragraph* (¶ 22). The Amended Complaint alleges that, under the corrupt Maduro regime, the Cartel of the Suns stole $11 million *from* PDVSA, and intended to use those stolen funds to purchase Plaintiff Gonzales's property. *Id*. The Amended Complaint does not allege that PDVSA was witting to

the theft of its funds or the use of those stolen funds to offer to purchase Plaintiff Gonzales's property. Nor does the Amended Complaint allege that any funds stolen from PDVSA, much less knowingly provided by PDVSA, were used to detain and torture Plaintiff Gonzales or to seize his property. The original Complaint alleged that when Plaintiff Gonzales "failed to acquiesce" to the sale (Compl. ¶ 12), "Nicolas Maduro and Diosdado Cabello ordered" Plaintiff Gonzales to be detained (*id*. ¶ 16) but did not allege any connection between PDVSA and this order. The Amended Complaint tries to rectify this failure by stating, instead, that "Nicolas Maduro and Diosdado Cabello, *and PDVSA* ordered" his detention. Am. Compl. ¶ 22 (emphasis added). But the Amended Complaint does not offer a single factual allegation to support that bald conclusion. *See id*. Nor does the Amended Complaint offer any factual support for the conclusory assertion that PDVSA is "the axis of narco-terrorism." *Id*. As to Plaintiff Pereira, the Amended Complaint does not allege, even in a conclusory manner, any connection between his injuries and PDVSA. *See* Am. Compl. ¶ 22; *see also id*. ¶¶ 4-7 (discussing Plaintiff Pereira's injuries).

Like the original Complaint, the Amended Complaint still does not state whether Plaintiffs are trying to bring ATA claims for primary liability, aiding abetting, or conspiracy. *See* Am. Compl. ¶¶ 40-48. Adding to the confusion, the two counts of the Amended Complaint only discuss Plaintiff Gonzales's claims and alleged injuries, leaving it even more unclear what, if any, claims Plaintiff Pereira is trying to assert and on what basis. *See id*.

## **ARGUMENT**

### I. **The Court Should Dismiss The Amended Complaint For Insufficient Process And Insufficient Service Of Process**

The FSIA provides the "sole basis" for establishing jurisdiction over a foreign state, including over an agency or instrumentality of a foreign state. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989); *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30-31 (2015); *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009). The Amended Complaint again concedes (at ¶ 22) that PDVSA is "state-owned," and several courts have recognized that PDVSA is "state owned" and thus a "foreign state." *See, e.g.*, *LukOil*, 65 F.4th at 563; *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-mc-0040, 2021 WL 1884110, at *5 (W.D.N.Y. May 11, 2021); *see also LS Energia Inc. v. Corporacion Electrica Nacional S.A.*, No. 21-cv-21642, 2023 WL 122196, at *1 (S.D. Fla. Jan. 6, 2023) (recognizing that service over PDVSA as an "agency of Venezuela" must comply with FSIA). It is thus indisputable that PDVSA is a "foreign state" under the FSIA. *See* 28 U.S.C. § 1603(b).

Under the FSIA, agencies and instrumentalities of foreign states—like PDVSA—must be served with process under the exclusive, hierarchical methods prescribed in 28 U.S.C. § 1608(b). *See* Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. §1608."). Section 1608(b) sets out the hierarchical methods for service on an agency or instrumentality of a foreign state:

> (1) "in accordance with any special arrangement for service" between the parties;
>
> (2) on an "agent authorized by appointment or by law to receive service of process in the United States" or "in accordance with an applicable international convention on service of judicial documents"; or
>
> (3) "if reasonably calculated to give actual notice," service of "a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—"
>
>> (A) by letter rogatory,
>>
>> (B) by mailing requiring a signed receipt and "dispatched by the clerk of the court," or
>>
>> (C) "as directed by order of the court consistent with the law of the place where service is to be made."

28 U.S.C. §§ 1608(b)(1), (2), (3)(A)-(C).

These procedures *must* be followed. As the Supreme Court has held, when serving a foreign state under § 1608(a), "the rule of law demands adherence to strict requirements." *Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019) (vacating default judgment based on improper service under FSIA). This principle applies with equal force to service on agencies and instrumentalities under § 1608(b), as this Court held in *LS Energia*, explaining that service on "a foreign state, its subdivisions and instrumentalities" is a "sensitive task" that likewise "demands adherence to strict requirements." 2023 WL 122196, at *6 (quoting *Harrison*, 587 U.S. at 19). Yet Plaintiffs still have not even *tried* to comply with the FSIA's service requirements.

Defective process and service of process cannot be brushed away as mere technicalities. Proper service of the summons is the means through which a court asserts personal jurisdiction, and a defendant is availed of its due-process opportunity to be heard. *See Prewitt Enters. v. OPEC*, 353 F.3d 916, 921 (11th Cir. 2003) (holding that proper service of summons is required to assert personal jurisdiction consistent with due process). Adherence to these procedures also serves important diplomatic concerns as to foreign states, which are particularly paramount

here, because PDVSA is governed by an ad hoc board appointed by the U.S.-recognized opposition government operating in exile. If plaintiffs are permitted to skirt strict service requirements through makeshift efforts, then confusion and due-process violations inevitably occur. Moreover, here, as in *Harrison*, U.S. treaty obligations are at issue. If plaintiffs are similarly permitted to jettison treaty obligations, placing the United States in violation, the United States risks reciprocal treatment abroad. *See, e.g.*, *Republic of Hungary v. Simon*, 604 U.S. 115, 132 (2025) ("This Court interprets the FSIA as we do other statutes affecting international relations: to avoid, where possible, producing friction in our relations with other nations and leading some to reciprocate by granting their courts permission to embroil the United States in expensive and difficult litigation." (internal quotation marks and citations omitted) (cleaned up)); *Harrison*, 587 U.S. at 19 (recognizing that service under the FSIA involves "a category of cases with sensitive diplomatic implications" requiring "adherence to strict requirements").

Here, PDVSA is operating under the *de jure* control of a board established by the U.S.-recognized government of Venezuela, whose members are charged with protecting and defending PDVSA's interests in exile because of the ongoing political crisis in Venezuela. Sending a process server to listen for voices and pound on doors at all hours undermines the "sensitive diplomatic implications" at stake when trying to serve a foreign state. Indeed, here, Plaintiff's process server caused the Ad Hoc Board's Chairman to fear that his door would be knocked down. Medina Decl. ¶ 16. The process server's offensive and aggressive behavior underscores the importance of strict adherence to statutory and treaty requirements for service.

Because there is no "special arrangement for service" between the parties, 28 U.S.C. § 1608(b)(1), the FSIA required Plaintiffs to serve PDVSA via the Hague Service Convention. *See id*. § 1608(b)(2); *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699 (1988))). To properly serve PDVSA under the Hague Service Convention, a plaintiff *must* (1) attempt service through Venezuela's central authority, (2) wait a period of no less than six months, (3) make every reasonable effort to obtain a certificate of service from Venezuela's central authority, and (4) without such a certificate, serve process in a manner consistent with Venezuelan law. *See Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1038-42 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 113 (2022) (holding that, because plaintiff failed to follow these Hague Service Convention requirements, plaintiff failed to properly serve Venezuela). Plaintiffs did *none* of

these things: Plaintiffs have provided no certificate from Venezuela's Central Authority; nor is there any other evidence that Plaintiffs attempted compliance with the Hague Service Convention or sought to resolve any difficulties in so complying through diplomatic channels, as the Convention prescribes. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 6, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Other litigants have had little difficulty in achieving service through such diplomatic channels. *See, e.g.*, Ltr. to Hon. S. Netburn, *Stansell v. FARC*, No. 16-mc-405 (S.D.N.Y. June 16, 2023), ECF 525 (confirming service on U.S.-recognized Venezuelan Ministry of Finance via diplomatic channels). Because Plaintiffs did not comply with the exclusive, hierarchical provisions of § 1608(b), service was improper and void, and this Court need look no further.

Indeed, *only* if Hague Convention service could not be effected could Plaintiffs *then* have attempted service under one of the alternate methods prescribed in § 1608(b)(3). But even if this Court could let Plaintiffs skip ahead to this subsection, Plaintiffs did not attempt compliance with any of the alternate methods authorized by § 1608(b)(3). Plaintiffs have put forward no evidence that service as attempted here was "directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request." *See* 28 U.S.C. § 1608(b)(3)(A). Nor did Plaintiffs attempt service by any "form of mail requiring a signed receipt . . . *addressed and dispatched by the clerk of the court* to the agency or instrumentality to be served." *See id*. § 1608(b)(3)(B) (emphasis added). Finally, Plaintiffs did not seek, let alone obtain, an order from this Court permitting service "consistent with the law of the place where service is to be made" under § 1608(b)(3)(C). The Amended Complaint thus must be dismissed under Rule 12(b)(5) for insufficient service of process.

Besides the defective service, the process itself was insufficient because Plaintiffs failed to request and obtain a summons with the proper deadline for a response. The summons that Plaintiffs requested demanded a response within 21 days. *See* Summons as to PDVSA (Oct. 1, 2025), ECF 5. But as a foreign state, PDVSA was entitled to 60 days to respond. 28 U.S.C. § 1608(d). Because the summons failed to state the proper time for a response, the Amended Complaint should also be dismissed under Rule 12(b)(4) for insufficient process. *Cf. Commodities & Minerals Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, No. 17-cv-20196, 2017 WL 11625759, at *4 (S.D. Fla. Apr. 4, 2017) (granting motion to quash improper service where plaintiff instructed foreign-state instrumentality defendant to respond within 20 days, and explaining that plaintiff "cannot claim it substantially complied with § 1608(b)" when its "attempted service . . . misstated the time period for [defendant] to file a response").

9

The Amended Complaint adds an unsupported, incorrect legal assertion that PDVSA's Ad Hoc Board's "function is not to be adversaries but to provide service to [PDVSA]," and that the Ad Hoc Board's "existence is solely to provide service to the government officials and defendants," and "[n]ot to litigate the merits of the claim." Am. Compl. ¶ 8. In fact, as explained in the declaration of the Ad Hoc Board's Chairman, the Ad Hoc Board was established by the U.S.-recognized government of Venezuela to, among other things, protect the interests and assets of PDVSA abroad. Medina Decl. ¶¶ 4-14. The Ad Hoc Board's role, by statute, thus includes the appointment of counsel to represent PDVSA in litigation and to litigate claims, as federal courts have consistently recognized. *See Lukoil*, 65 F.4th at 562-630; *Caballero*, 2021 WL 1884110, at *6; *Jiménez*, 250 A.3d at, 828-31.

**II.    The Court Should Dismiss The Amended Complaint For Lack Of Subject-Matter Jurisdiction Under The Foreign Sovereign Immunities Act**

Under the FSIA, foreign states, including their agencies and instrumentalities, are "presumptively immune" from the jurisdiction of U.S. courts. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Unless Plaintiffs "show (and not just arguably show)" that one of the FSIA's specified exceptions to sovereign immunity applies, this Court lacks subject-matter jurisdiction over PDVSA. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 175-76, 187 (2017) (citing 28 U.S.C. § 1604).

Because Plaintiffs do not plead any exception to foreign sovereign immunity, much less establish that one exists, the Amended Complaint must be dismissed for lack of subject-matter jurisdiction. *See* Am. Compl. ¶¶ 36-39 (failing to include FSIA as basis for subject-matter jurisdiction); *see also Isaac Indus. v. Petroquimica de Venez., S.A.*, No. 19-cv-23113, 2022 WL 820376, at *14 (S.D. Fla. Mar. 1, 2022) (dismissing complaint for failing to "plead the FSIA as the Court's basis for subject matter jurisdiction" and failing to "specifically invoke any of the FSIA's exceptions to foreign sovereign immunity"), *adopted*, 2022 WL 1203004 (S.D. Fla. Apr. 21, 2022); *Sequeira v. Republic of Nicaragua*, 815 F. App'x 345, 348-49 (11th Cir. 2020) ("A plaintiff who seeks to sue a foreign state has the burden of establishing subject matter jurisdiction by 'producing evidence' that one of the FSIA's sovereign-immunity exceptions applies." (quoting *Butler*, 579 F.3d at 1312-13)).

In any event, no FSIA exception could apply here, even if specifically invoked. Because Plaintiffs' claims are brought under the ATA, the only possible exception to PDVSA's sovereign immunity is the one provided by § 1605B of the FSIA. *See* 18 U.S.C. § 2337(2) (prohibiting actions under the ATA against "a foreign state" or "an agency of a foreign state"); *see also In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 642 & n.6

10

(S.D.N.Y. 2018). Before enactment of the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (2016) (codified at 28 U.S.C. § 1605B), "the ATA had explicitly barred claims brought thereunder from being asserted against foreign states." *In re Terrorist Attacks*, 298 F. Supp. 3d at 642 & n.6 (citing 18 U.S.C. 2337). JASTA now "permits *United States nationals* to assert claims against foreign states under the ATA, provided that the requirements of its newly-created FSIA exception are otherwise met." *Id*. (emphasis added) (citing 28 U.S.C. § 1605B(c)); *see also Watson v. Kingdom of Saudi Arabia*, No. 21-cv-329, 2024 WL 1344643, at *6 n.16 (N.D. Fla. Mar. 30, 2024) (explaining that "an ATA suit is ordinarily not authorized against a foreign state," but that JASTA "allows suit against a foreign state 'in accordance with § 2333,' *as long as the requirements of § 1605B(b) are met*" (emphasis added)).

Further, Section 1605B only withdraws sovereign immunity in ATA cases brought by U.S. nationals against foreign states involving "physical injury . . . or death *occurring in the United States* and caused by[] (1) an act of international terrorism *in the United States*; and (2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred." 28 U.S.C. § 1605B(b) (emphases added); *see also Watson*, 2024 WL 1344643, at *6 & n.16.

The Amended Complaint meets none of these requirements. *First*, Plaintiff Gonzales is not a U.S. national. *See* Am. Compl. ¶ 1 (stating that Plaintiff Gonzales is Venezuelan). *Second*, for both Plaintiffs, all of the alleged conduct and the injuries took place in Venezuela. *See* Am. Compl. ¶¶ 2-7; 10-35. *Third*, the Amended Complaint alleges, at most, that Maduro and his cronies committed tortious acts. But the Amended Complaint does not, and cannot, allege that any such acts were committed by an "official, employee, or agent" of Venezuela "while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605B(b). That is because no member of the illegitimate Maduro regime is an official, employee, or agent of the U.S.-recognized, legitimate government of Venezuela. *See generally Venezuela: A Democratic Crisis*, U.S. Dep't of State, https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/. And to attribute the alleged suit-related conduct of the illegitimate Maduro regime to PDVSA would implicitly recognize Maduro's claim to control the government of Venezuela in violation of the political question doctrine. *See LukOil*, 65 F.4th at 563-64 (holding that political questions are not Article III cases or controversies), *cert. denied*, 144 S. Ct. 343 (2023). Because the power to "identify the legitimate political leadership of a foreign country" belongs exclusively

11

to the U.S. President, the question of the illegitimate Maduro regime's purported interests in and control over PDVSA is nonjusticiable. *See id*. at 562-64.

## III.   The Court Should Dismiss The Amended Complaint For Lack Of Personal Jurisdiction Over PDVSA

To establish personal jurisdiction, the FSIA requires both proper service of process under § 1608 and satisfaction of an exception to sovereign immunity. *See* 28 U.S.C. § 1330(b). Because Plaintiffs failed to serve PDVSA under § 1608, and the Amended Complaint does not plead any sovereign-immunity exception, much less show that any exception exists, the Amended Complaint must be dismissed for lack of personal jurisdiction.

Agencies and instrumentalities of foreign states, like PDVSA, are also entitled to due process protection under the U.S. Constitution. *See Texas Trading and Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981) (holding that 28 U.S.C. § 1330(b) "cannot create personal jurisdiction where the Constitution forbids it"), *cert. denied*, 454 U.S. 1148 (1982). Courts assess whether personal jurisdiction comports with due process by analyzing "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). For that relationship to support an "exercise [of] jurisdiction consistent with due process," a "substantial connection" must exist between the "defendant's suit-related conduct" and the forum. *Id*. And the defendant's contacts with the forum "must be a 'but-for' cause" of the plaintiff's injuries. *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009)).

The Amended Complaint does not point to *any* conduct in or directed at the United States by PDVSA. *See* Am. Compl. ¶ 16. The Amended Complaint certainly does not allege that any purported conduct by PDVSA in the United States had a "substantial connection" to either Plaintiffs' injuries, much less that it was a "but-for" cause of those injuries. *Walden*, 571 U.S. at 284; *Fraser*, 594 F.3d at 850. Again, all of the alleged conduct (none of which was by PDVSA), and the alleged injuries occurred in Venezuela.

## IV.   The Court Should Dismiss The Amended Complaint As An Impermissible Shotgun Pleading

Aside from the intractable jurisdictional hurdles, the Amended Complaint is a quintessential "shotgun pleading" that violates Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320-23 (11th Cir. 2015) (setting out categories of impermissible shotgun pleadings). The Amended Complaint leaves PDVSA and the Court to guess whether Plaintiffs are bringing claims against

PDVSA for primary liability under 18 U.S.C. §2333(a), or secondary liability under 18 U.S.C. §2333(d). And if Plaintiffs are purporting to bring secondary-liability claims, the Amended Complaint does not specify whether those claims are for aiding-and-abetting or conspiracy. Instead, the Amended Complaint simply asserts, under a single count, a "Claim Pursuant Violation Of International Terrorism Act Under 18 U.S.C. § 2333 et seq." *See* Am. Compl. at Count I. The Amended Complaint then parrots the language of Section 2333, without pleading any of the elements of any primary- or secondary-liability claim. The Amended Complaint does the same with respect to Count II for a claim under state law. *See id.* at Count II.

Compounding the confusion, both Count I and Count II only include allegations and claims specific to Plaintiff Gonzales, but not Plaintiff Pereira. *See id.* at Counts I, II. It is thus even more unclear which claims, if any, Plaintiff Pereira is actually trying to bring against PDVSA, much less the basis for any such claims.

The Amended Complaint is thus an impermissible shotgun pleading, because, failing to specify what type of ATA claim either Plaintiff is attempting to bring against PDVSA, or the basis for those claims, the Amended Complaint necessarily fails to "give [PDVSA] adequate notice of the claims against [it] and the grounds upon which each claim rests." *See Weiland*, 792 F.3d at 1322-23. The Amended Complaint renders it impossible for PDVSA to "discern what [Plaintiffs are] claiming and frame a responsive pleading." *Id.* at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). Nor can the Court "determine which facts support which claims and whether the plaintiff[s] ha[ve] stated any claims upon which relief can be granted." *Id.* (quoting *T.D.S.*, 760 F.2d at 1544 n.14).

## V.     The Court Should Dismiss The Amended Complaint For Failure To State A Claim

Although the Amended Complaint does not specify what type of ATA claim Plaintiffs are trying to bring, the woefully deficient allegations could not support *any* claim against PDVSA under the ATA, 18 U.S.C. § 2333, *et seq.*, or Florida's analogous anti-terrorism law, Fla. Stat. § 772.13. Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may consider only well-pleaded factual allegations and must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555).

### A.    Plaintiffs Fail To State A Claim Under The ATA

Section 2333(a) provides a cause of action for "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). Section 2333(d) provides that, "in an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." Plaintiffs fail to plead these elements under either subsection.

*First*, the Amended Complaint necessarily fails to state a claim under the ATA, because the statute makes clear that "[n]o action shall be maintained under" the ATA against "an agency of a foreign state" like PDVSA. 18 U.S.C. § 2337. As discussed above, while § 1605B "permits United States nationals to assert claims against foreign states under the ATA," the statutory bar to bringing an ATA action is not lifted unless "the requirements of [this] FSIA exception are otherwise met." *In re Terrorist Attacks*, 298 F. Supp. 3d at 642 n.6 (citing 28 U.S.C. § 1605B(c)); *see also Watson*, 2024 WL 1344643, at *6 & n.16. The Amended Complaint is fatally flawed because, as discussed above, the Amended Complaint does not meet those threshold requirements.

*Second*, the Amended Complaint alleges that Plaintiff Gonzales is Venezuelan, not a U.S. national; that the alleged tortious conduct of the Maduro regime as to both Plaintiffs took place in Venezuela, not the United States; and that both Plaintiffs' alleged injuries all took place in Venezuela, not the United States. *See supra* § II. Because the Amended Complaint fails to overcome the ATA's statutory bar to file this action, Plaintiffs' ATA claims must be dismissed in their entirety.

*Third*, threshold defects aside, Plaintiffs' conclusory allegations fail to establish any element of an ATA primary- or secondary-liability claim against PDVSA.

### 1.    Plaintiffs Fail To State A Claim For Primary Liability

To state an ATA primary-liability claim, Plaintiffs must allege facts that PDVSA (1) *itself* "directly committed an 'act of international terrorism,'" (2) with "the requisite mental state," and (3) "proximately caused [the plaintiff's] injuries." *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1375-81 (S.D. Fla. 2024) (dismissing ATA complaint for failure to state a claim); *see also, e.g.*, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016)

("To prevail under the ATA, a plaintiff must prove three formal elements: unlawful *action*, the requisite *mental state*, and *causation*." (emphasis in original) (quotation omitted)).

To plead an "act of international terrorism," Plaintiffs must allege, among other things, that PDVSA *itself* committed "violent acts or acts dangerous to human life." 18 U.S.C. § 2331(1); *see also, e.g.*, *Newman*, 758 F. Supp. 3d at 1375 (dismissing where AP's freelance photographers' alleged connections to Hamas did not involve "violent acts or acts dangerous to human life"); *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018) (holding that "provision of material support to a terrorist organization does not invariably equate to an act of international terrorism" and dismissing for failure to plausibly allege that defendant's banking services involved violence or endangerment to human life).

To plead the requisite mental state, Plaintiffs must allege that PDVSA's purported support was "knowing." *Newman*, 758 F. Supp. 3d at 1378-79; *see Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 (2d Cir. 2014) (holding that § 2333(a) "incorporates the knowledge requirement from [the alleged predicate act]"); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 42 (D.D.C. 2010) (same).

And to plead proximate cause, Plaintiffs must allege that PDVSA's alleged acts were a "'substantial factor' in the sequence of events leading to [their] injuries and that such injuries were 'reasonably foreseeable or anticipated' as a natural result of the defendant's conduct." *Newman*, 758 F. Supp. 3d at 1380 (quoting *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018)); *see also O'Neill v. Al Rajhi Bank*, 714 F.3d 118, 123 (2d Cir. 2013) (dismissing for failure to state a claim where, among other things, plaintiffs failed to allege that bank's services caused plaintiffs' injuries). This standard requires a "direct relationship" between the defendant's conduct and the injury. *Rothstein v. UBS AG*, 708 F.3d 82, 91-92 (2d Cir. 2013); *see also Fields v. Twitter*, 881 F.3d 739, 749-50 (9th Cir. 2018) (affirming dismissal of primary-liability claims where plaintiffs failed to allege that "Twitter's provision of communication equipment to ISIS . . . had any direct relationship with the injuries that Plaintiffs-Appellants suffered"); *cf. Twitter*, 598 U.S. at 497 (requiring plaintiff to allege that defendant aided and abetted "the act of international terrorism that injured the plaintiff[]"); *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 438 (2d Cir. 2025) (same).

Plaintiffs can meet none of these elements. As to Plaintiff Gonzales, the Amended Complaint alleges that the Maduro regime *would have* stolen funds from PDVSA to buy his property, but he refused the sale. *See* Am. Compl. ¶¶ 18, 22. This meager allegation cannot support a plausible inference that PDVSA *itself* committed any violent or dangerous act, much less that it did so knowingly or proximately caused his injuries. Nor does the Complaint allege,

even in a conclusory manner, that PDVSA acted knowingly and intentionally with respect to the corrupt Maduro regime's plan to pilfer PDVSA's assets to buy his farm. *See Newman,* 758 F. Supp. 3d at 1378-79; *Weiss*, 768 F.3d at 207; *Wultz*, 755 F. Supp. 2d at 42. The Amended Complaint makes no well-pleaded, factual allegation to support the new, conclusory assertion that "PDVSA," along with Maduro and another defendant, "ordered" Plaintiff Gonzales's detention. The blatant insertion of "and PDVSA" into this conclusory assertion, with no factual support or specifics, and where the Amended Complaint does not otherwise allege any conduct by PDVSA, cannot support a plausible inference that PDVSA itself committed any violent or dangerous acts. *See* 18 U.S.C. § 2331(1); *Newman*, 758 F. Supp. 3d at 1376; *Linde*, 882 F.3d at 326. The Complaint likewise fails to plausibly allege that any conduct by PDVSA *caused* or had any "direct relationship" to his injuries. *See Newman,* 758 F. Supp. 3d at 1380; *O'Neill*, 714 F.3d at 123; *Rothstein*, 708 F.3d at 91-92; *Fields*, 881 F.3d at 749-50.

As to Plaintiff Pereira, the Amended Complaint does not allege any conduct *at all* by PDVSA with any purported connection to his injuries. *See* Am. Compl. ¶¶ 4-7. The Amended Complaint alleges that Plaintiff Pereira was detained and threatened with torture under the orders of Maduro and other members of his illegitimate regime. But the Amended Complaint does not allege that PDVSA had *any* role in his injuries. Moreover, none of the alleged conduct by Maduro and his cronies as to either Plaintiff can be attributed to PDVSA, as discussed above. *Supra* § II (citing *LukOil*, 65 F.4th at 563-64).

### 2. Plaintiffs Fail To State A Claim For Secondary Liability

The Amended Complaint fails to meet any of the elements for either aiding-and-abetting or conspiracy liability under the ATA. At the outset, Plaintiffs cannot state a claim for ATA secondary liability because they do not, and cannot, allege that their injuries arose from an act of international terrorism committed, planned, or authorized by an organization that was designated as a foreign terrorist organization "as of the date on which such act of international terrorism was committed, planned, or authorized." *See* 18 U.S.C. § 2333(d)(2); *see also Keren Kayemeth Leisrael-Jewish Nat'l Fund v. Educ. for a Just Peace in the Middle East*, 530 F. Supp. 3d 8, 13 (D.D.C. 2021) (holding that complaint failed to allege that attacks were planned or authorized by designated foreign terrorist organization (FTO)). The Cartel de los Soles was not designated as an FTO until November 24, 2025, years after the alleged conduct here. *See* U.S. Dep't of State, Press Release, Terrorist Designations of Cartel de los Soles (Nov. 16, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/11/terrorist-designations-of-cartel-de-los-soles. With this threshold failure, the Court need look no further, but Plaintiffs also meet none of the other elements.

*Aiding-and-abetting liability:* Under § 2333(d)(2), a plaintiff must allege that the defendant "aids and abets" the terrorist act "by knowingly providing substantial assistance" to "the person who committed" such act, and is "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483, 486 (2023). And a plaintiff must allege that the defendant's actions proximately caused the plaintiff's injuries. *See SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (explaining that substantial assistance "requires the plaintiff to allege that the actions of the aider-abettor proximately caused the harm on which the primary liability is predicated").

To establish the "knowing and substantial assistance" prong, a plaintiff must allege facts establishing that the defendants "*consciously and culpably participated in* the" terrorist attack at issue. *Id.* at 506 (emphasis added) (holding that defendants did not aid and abet ISIS in carrying out terrorist attack by allowing ISIS to access their social media platforms); *see also Newman*, 758 F. Supp. 3d 1357 (holding that defendant Associated Press did not aid and abet Hamas in carrying out October 7 Attacks where its freelance photographers were "longstanding Hamas affiliates" who accompanied Hamas during the attacks). Here, as discussed above, the Amended Complaint does not allege facts to support a plausible inference that PDVSA provided *any* support, or participated in *any* conduct, related to the alleged acts that injured Plaintiffs—much less that any such support was "knowing and substantial." Again, as to Plaintiff Gonzales, the Amended Complaint alleges at most that Maduro's cronies had intended to purchase Plaintiff's farm with money they looted from PDVSA, but did not actually do so. The Amended Complaint does not allege that PDVSA was witting of this plan, much less plausibly allege that it "consciously and culpably participated" in the misconduct. And as to Plaintiff Pereira, the Amended Complaint does not allege any conduct *at all* by PDVSA related to his injuries, even in a conclusory manner.

To establish the "general awareness" prong, a plaintiff must allege that the defendant was "aware that, by assisting the principal" it was "playing a 'role' in an FTO's violent or life-endangering activities." *Newman*, 758 F. Supp. 3d at 1368 (citing *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 337 (E.D.N.Y. 2023)); *see also id.* (holding that allegations that Hamas used defendant AP as "a tool" for propaganda could not establish that AP was itself "playing a role in" Hamas activities). Plaintiffs plainly cannot meet this requirement, given that, as discussed, Plaintiffs fail to allege that PDVSA played *any* role in *any* "FTO's" activities, violent or otherwise.

17

Lastly, as discussed above, Plaintiffs fail to allege that PDVSA committed any conduct that *caused* either Plaintiffs' injuries.

*Conspiracy Liability:* To the extent Plaintiffs asserts a conspiracy claim, that claim also fails. To state a conspiracy claim under the ATA, Plaintiffs must allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Newman*, 758 F. Supp. 3d at 1373-74 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. App. 1983)); *see also id.* (dismissing for failure to allege AP and Hamas were "pursuing a common object"); *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 80, 82 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 83 (2023) (affirming dismissal of ATA conspiracy claim for failure to allege that terrorist attacks at issue were in furtherance of alleged conspiracy to circumvent sanctions). The Amended Complaint does not allege any agreement between PDVSA and Maduro's cronies, much less make any well-pleaded allegation that they were "pursuing a common object," or that Plaintiffs' injuries resulted from any overt act in furtherance of any such common pursuit.

### B.      Plaintiffs Fail To State An ATA Claim Under State Law

The Florida Anti-Terrorism Act, § 772.13(1), Fla. Stat., cannot permit ATA claims against a foreign state where the ATA forbids it. *See* 18 U.S.C. § 2337(2) (prohibiting actions under the ATA against "a foreign state" or "an agency of a foreign state"). In any event, because the Florida ATA is "nearly identical to the Federal ATA," a failure to state a claim under the federal ATA necessarily dooms Plaintiff's state-law claim. *See Newman*, 758 F. Supp. 3d at 1381. Because the Amended Complaint fails to meet the elements of ATA primary or secondary liability, *see* § IV.A, the state-law claim must also be dismissed.

## VI.      The Court Should Dismiss The Amended Complaint For Improper Venue

This action should also be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) because venue is not proper in this District. PDVSA is a foreign state under the FSIA, and so venue is governed exclusively by 28 U.S.C. § 1391(f). *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104 (2d Cir. 2017) (describing FSIA "venue requirements . . . set forth in 28 U.S.C. § 1391(f)"). Section 1391(f) provides that actions against a foreign state may be brought only:

> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

(2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

(4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).

None of these subsections permits venue in this District. Indeed, the Amended Complaint does not try to allege that venue is permissible under Section 1391(f) at all. Instead, the Amended Complaint asserts (at ¶ 37) that venue is proper because "codefendants operated in [the District] to advance [] narco-terrorism finances" and "Defendants have all been indicted in the United States and been designated by the United States as narco-terrorists, or under the United States narco-kingpin designation." But neither of these assertions is plausibly alleged with respect to PDVSA. The Amended Complaint does not allege facts that any Defendant "operated in" this District "to advance [] narco-terrorism finances." At most, the Amended Complaint alleges that some Defendants—but not PDVSA—have ownership interests in companies with addresses in Florida, but the Amended Complaint does not allege that these companies have any connection to this action. And the Amended Complaint does not allege that PDVSA has ever been indicted in the United States or designated as a narco-terrorist or narco-kingpin. Nor could it. *See* Press Release, Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A. (Jan. 28, 2019), available at: https://home.treasury.gov/news/press-releases/sm594 (stating that purpose of designation was to "help prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people of Venezuela").

The Amended Complaint adds that "PDVSA has its ad hoc Chair present in the district Court for the Southern District of Florida," but even if plausibly alleged, none of these assertions could establish venue under Section 1391(f). Regardless of any Ad Hoc Board member's presence—while operating in exile—the Amended Complaint does not and cannot show that a "substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(f)(1). To the contrary, the claims asserted arise from conduct and injuries that all allegedly occurred in Venezuela. *See* Am. Compl. ¶¶ 1-35, 37. No part of these events occurred in Florida, let alone a "substantial part," as required to bring this suit in this District. *See Rodriguez v. Imperial Brands PLC*, No. 20-cv-23287, 2022 WL 18704831, at

*5 (S.D. Fla. Nov. 2, 2022) (holding that venue was improper where plaintiffs did "not allege that any of the Defendants undertook these alleged activities in the Southern District of Florida"), *adopted*, No. 20-cv-23287, 2023 WL 2726701 (S.D. Fla. Mar. 31, 2023), *supplemented,* No. 20-cv-23287, 2023 WL 9228332 (S.D. Fla. Nov. 28, 2023); *cf. Goff v. Hackett Stone Co.*, No. 98-cv-7137, 1999 WL 397409, at *1 (10th Cir. June 17, 1999) (remanding for dismissal for improper venue because "[a]ll aspects" of plaintiff's claim occurred in Arkansas).

Subsections (2) and (3) of § 1391(f) are also inapplicable here. This is not an admiralty case, nor do Plaintiffs allege that PDVSA is "licensed to do business or is doing business" in Florida.

Thus, the only venue where this action could have been brought in the United States is the U.S. District Court for the District of Columbia. 28 U.S.C. § 1391(f)(4). And, although § 1406(a) permits transfer rather than dismissal where transfer would "be in the interest of justice," transfer here would not be "in the interest of justice," because Plaintiffs' claims cannot establish jurisdiction or state a claim. *Pinson v. Rumsfeld*, 192 F. App'x 811, 818 (11th Cir. 2006) (affirming refusal to transfer claims where there was no federal district court in which plaintiff could bring his claims); *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 798 (10th Cir. 2013) (holding that "it would be an abuse of discretion" to transfer claims that were time-barred and failed to state a claim). Permitting transfer here would be particularly futile, and not "in the interest of justice," because Plaintiffs have amended their complaint but still failed to correct the glaring deficiencies that PDVSA's opening motion identified.

## CONCLUSION

For these reasons, this Court should dismiss the Amended Complaint with prejudice under Rules 8(a)(2), 10(b), and 12(b)(1)-(6) of the Federal Rules of Civil Procedure. PDVSA expressly reserves, and does not waive, all of its rights, privileges, immunities, and defenses, including those not asserted above.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), PDVSA requests oral argument on this motion to enable full development of the issues and arguments raised in this case and to facilitate the Court's resolution of this motion.

## RULE 7.1(a)(3) CERTIFICATION

Undersigned counsel has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good-faith effort to resolve the issues raised in the motion. Plaintiff opposes the motion.

Dated:  December 10, 2025

Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ Jaime Bianchi*
Jaime Bianchi
W. Dylan Fay
200 S Biscayne Blvd.
Miami, FL 33131
(305) 371-2700
jbianchi@whitecase.com
dylan.fay@whitecase.com

Claire A. DeLelle (*pro hac vice* pending)
Danielle Tarin (*pro hac vice*)
701 Thirteenth Street NW
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
danielle.tarin@whitecase.com

*Counsel for PDVSA*